http://www.va.gov/vetapp16/Files3/1621731.txt

Citation Nr: 1621731 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 10-34 819 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Manila, the Republic of the Philippines

THE ISSUE

Entitlement to service connection for the cause of the Veteran's death. 

REPRESENTATION

Appellant represented by: The American Legion

WITNESSES AT HEARING ON APPEAL

Appellant, Veteran's Daughter, [redacted], L. Casison, M.D.

ATTORNEY FOR THE BOARD

Jaime M. Porter, Associate Counsel

INTRODUCTION

The Veteran served in the Philippine Scouts from April 1946 to March 1949. He passed away in April 2007, and the Appellant is his surviving spouse.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Manila, the Republic of the Philippines. 

The Appellant testified at a hearing before the undersigned Veterans Law Judge (VLJ) in April 2011. A transcript of that hearing is associated with the claims file.

In a February 2013 decision, the Board denied the Appellant's claim for entitlement to service connection for the cause of the Veteran's death; denied the claims for Dependency and Indemnity Compensation (DIC) pursuant to 38 U.S.C.A. § 1318 and for burial benefits; and remanded the claims for accrued benefits and death pension benefits. The Appellant appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In a July 2014 Order, the Court granted a Partial Joint Motion for Remand (JMR), which vacated the February 2013 Board decision insofar as it denied entitlement to service connection for the cause of the Veteran's death. In accordance with the JMR, the cause of death claim was remanded to the Board to determine whether a medical opinion was necessary to substantiate the claim. In addition, the JMR provided that the Appellant's claims of entitlement to DIC and burial benefits were withdrawn. As to the issues of entitlement to accrued benefits and death pension benefits, the JMR specified that the Board's remand of these claims would remain undisturbed. The issues of entitlement to accrued benefits and to death pension benefits have not been adjudicated by the RO on remand. Thus, they are not currently before the Board. 

In November 2014, the Board remanded the claim for service connection for the cause of the Veteran's death. For the reasons discussed below, the Board finds that the RO is in substantial compliance with the Board's directives on remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. The Veteran died in April 2007.
 
2. The Veteran's death certificate lists the causes of death, per autopsy, as pneumonia, bilaterally, and coronary artery disease. 

3. Service connection was not in effect for any disability at the time of the Veteran's death. 
 
4. The probative evidence of record does not demonstrate that it is at least as likely as not that the Veteran's causes of death manifested during his period of active military service or are otherwise related to his military service. 

CONCLUSION OF LAW

The criteria for service connection for the cause of the Veteran's death are not met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1310, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.312 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

VCAA

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist appellants in substantiating claims for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

Proper notice from VA must inform the appellant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the appellant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In the context of a claim for service connection for cause of death, section 5103(a) notice must include (1) a statement of the conditions, if any, for which a veteran was service connected at the time of his death; (2) an explanation of the evidence and information required to substantiate a service connection cause of death claim based on a previously service-connected disability; and (3) an explanation of the evidence and information required to substantiate a claim for such benefits based on a disability not yet service connected. Hupp v. Nicholson, 21 Vet. App. 342 (2007).

Here, a VA letter issued in August 2008 satisfied the duty to notify provisions with respect to service connection for the cause of the Veteran's death. The letter notified the Appellant that the Veteran was not service-connected for any disability during his lifetime, and provided an explanation of the evidence and information required to substantiate a service connection cause of death claim based on a disability not yet service connected

The duty to assist has also been satisfied in this case. The record includes the Veteran's service treatment records, service personnel records, "buddy" statements from people who knew the Veteran, and lay statements and medical evidence submitted by the Appellant. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. In addition, a VA medical opinion was obtained in November 2014 in connection with the Appellant's claim. The VA physician reviewed the Veteran's relevant medical history and provided an opinion with adequate rationale based on, and with citation to, the records reviewed. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. See 38 C.F.R. § 3.159(c)(4).

There is no indication in the record that any additional evidence, relevant to the issue adjudicated in this decision, is available and not part of the claims file. See Pelegrini, 18 Vet. App. at 112. Moreover, because there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield, 20 Vet. App. at 537; see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009). 

Other Due Process Considerations

As noted above, the Veteran was afforded a hearing before the undersigned VLJ in April 2011. The Court has held that 38 C.F.R. § 3.103(c)(2) requires that the VLJ who conducts a hearing fulfill two duties to comply with the above regulation. Bryant v. Shinseki, 23 Vet. App. 488 (2010). These duties consist of (1) the duty to fully explain the issues, and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the VLJ asked the Appellant's witnesses specific questions regarding why the Veteran's cause of death should be service connected. The hearing focused on the elements necessary to substantiate the claim, and the Appellant, through the witnesses who testified on her behalf, demonstrated that she had actual knowledge of the elements necessary to substantiate the claim. Furthermore, the VLJ solicited information as to the existence of any outstanding evidence and accepted as part of the record additional evidence along with a signed waiver of RO consideration of the additional evidence. Neither the Appellant nor her representative has suggested any deficiency in the conduct of the hearing. Therefore, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

As noted in the Introduction, this case was previously remanded by the Board in November 2014. A Board remand confers upon an appellant the right to compliance with that order. Stegall v. West, 11 Vet. App. 268, 271 (1998); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that there must be substantial compliance with the terms of a Court or Board remand). Here, the November 2014 Board remand directed the RO to obtain an opinion from a VA medical examiner as to the cause of the Veteran's death and then readjudicate the claim and issue a supplemental statement of the case, if warranted. Pursuant to the remand, the RO obtained the opinion of a VA medical examiner in January 2015 and then issued a supplemental statement of the case. Accordingly, the Board finds that VA at least substantially complied with the November 2014 Board remand. See 38 U.S.C.A. § 5103A(b); Stegall v. West, 11 Vet. App. 268 (1998).

Legal Criteria

Generally, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may also be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease was incurred during service. 38 U.S.C.A. § 1113(b); 38 C.F.R. § 3.303(d); Cosman v. Principi, 3 Vet. App. 503, 505 (1992).

In order to establish direct service connection for a disorder, there must be (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of a disease contracted, an injury suffered, or an event witnessed or experienced in active service; and (3) competent evidence of a nexus or connection between the disease, injury, or event in service and the current disability. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); see Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Pond v. West, 12 Vet App. 341, 346 (1999).

In addition, certain chronic diseases, including tuberculosis, may be presumed to have been incurred during service if the disease becomes manifest to a compensable degree within a presumptive period following separation from qualifying military service. 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015). The presumptive period for tuberculosis is three years. 38 C.F.R. § 3.307(a)(3). Service connection on the basis of continuity of symptomatology can be established for the chronic diseases specified at 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Service connection may also be established on a secondary basis for a disability that is shown to be proximately due to or the result of a service connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by a service-connected disability or (b) aggravated by a service-connected disability. Id.; Allen v. Brown, 7 Vet. App. 439, 488 (1995) (en banc). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999).

VA death benefits are payable to the surviving spouse of a veteran if the veteran died from a service-connected disability. 38 U.S.C.A. § 1310; 38 C.F.R. §§ 3.5, 3.312. In order to establish service connection for the cause of a veteran's death, the evidence must show that a disability incurred in or aggravated by active service was the principal or contributory cause of death. 38 C.F.R. § 3.312.

To constitute the principal cause of death, a service-connected disability must be one of the immediate or underlying causes of death, or be etiologically related to the cause of death. To be a contributory cause of death requires a showing that the service-connected disability contributed substantially or materially to cause death; that it combined to cause death; or that it aided or lent assistance to the production of death. It is not sufficient to show that the service-connected disorder casually shared in producing death; rather, it must be shown that there was a causal connection between the service-connected disability and the veteran's death. 38 C.F.R. § 3.312(b), (c). If the evidence shows that the veteran died of a disorder that was ultimately related to his military service, the regulations do not require a service-connected disability to be the primary cause of death, only to be "etiologically related" or "causally connected." 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312.

Facts

Historically, the Veteran served in the Philippine Scouts from April 1946 to March 1949. A Certificate of Death shows that the Veteran died in April 2007. In January 2009, the Appellant, the Veteran's surviving spouse, submitted a claim of entitlement to service connection for the cause of the Veteran's death.

At the time of the Veteran's death in April 2007, service connection had not been granted for any disability. The Veteran's Certificate of Death lists pneumonia, bilaterally, and coronary artery disease as the causes of the Veteran's death. In her appeal, the Appellant contends that the pneumonia which led to the Veteran's death was related to his active duty service.

The Veteran's service treatment records do not show complaints of or treatment for either pneumonia or coronary artery disease during active service.

An April 1946 Oath and Certificate of Enlistment demonstrates that the Veteran underwent a physical examination, including a radiological examination of his chest, at the time of his enlistment. The chest x-ray was negative and his cardiovascular system was deemed normal.

In June 1948, the Veteran requested that serology testing be administered for an unstated reason. He denied having malaria.

An October 1948 treatment report shows complaints of a "cold" and headache. The Veteran was diagnosed with an upper respiratory infection. 

In March 1949, the Veteran underwent a discharge examination. The report of this examination provides no indication that the Veteran complained of or was treated for pneumonia or coronary artery disease or symptoms thereof during service. Other than noting a history of appendicitis in December 1946, the examiner found the Veteran to have "no physical defect." Further, radiological examinations of the Veteran's lungs, chest, and heart showed "[no significant abnormalities]." Ultimately, the Veteran was deemed qualified for discharge. His last official day of service in the Philippine Scouts was March 21, 1949.

In March 1951, the Veteran submitted a claim for entitlement to service connection for "lung trouble," which he described as continuous pain in the "left (back region)" that began on March 21, 1949. The Veteran claimed that he was treated for pulmonary tuberculosis at San Lazaro Hospital (Galas Center) in Manila, the Philippines, in February 1951. Development of this claim yielded a June 1952 statement from the Acting Chief of the San Lazaro Hospital stating that there were no records showing the Veteran was admitted and confined to the hospital from January 1951 through March 1951. The Acting Chief then referred the RO to the director of the National Chest Center, which was housed within but was not a unit of San Lazaro Hospital. A search for records at the National Chest Center did not produce any treatment records or chest x-rays. In December 1951, a search for service treatment records from Clark Field Hospital, dated in 1946, uncovered three x-rays. In July 1952, a VA medical professional was unable to ascertain the dates of these x-rays, but stated that their results were within normal limits. Ultimately, in an October 1952 rating decision, service connection for pulmonary tuberculosis was denied. 

The Appellant submitted post-service treatment records demonstrating that the Veteran was treated for a variety of disorders. These records demonstrate that the Veteran experienced a cardiovascular accident in April 1999, specifically a right basal ganglia hemorrhage.

In a January 2010 statement, [redacted] asserted that he knew the Veteran because they were companions and friends of Bicol (a region in the Philippines) during the World War II era and were in the military at the same time. Mr. [redacted] stated, "we know for a fact that [on] several occasions [the Veteran] was encountering difficulty [with] breathing and sometimes a very hard cough way back in May 31, 1945[,] which would cause him to go home and take a rest[.]" 

In a separate January 2010 statement, Mr. [redacted] asserted that he served in the Philippine military from July 1942 to September 1945. He reiterated that he knew the Veteran because they were from the same region in the Philippines and that they contemporaneously served in the military. Mr. [redacted] claimed the Veteran joined the Philippine Scouts in 1946, but "his health was already in trouble." He stated that the Veteran experienced difficulty breathing and coughing, which led to his early retirement. Mr. [redacted] claims the Veteran died from complications and disease incurred in or due to his service in the Philippine Scouts.

In March 2010, an opinion was submitted that listed Froilan M. Mendoza, a "Nurse-Researcher," as the preparer; it was signed by an individual purporting to be a medical doctor, whose name is illegible. Citing the MERCK Manual of Medical Information, Second Home Edition, this opinion discussed the definition, prevalence rate, symptoms, and typical causes of pneumonia; diabetes mellitus, type II; heart attack; high blood pressure; and dysarthria. The opinion concluded that the Veteran experienced a "lung problem" commencing in 1946 and persisting until his death. A diagnosis of "pneumonia moderate; [cardiovascular accident]" was provided.

In July 2010, the Appellant submitted another opinion purportedly from "Certified Nurses" [redacted]. [redacted] and [redacted] (both titled "Nurse Researcher") and under the supervision of a "licensed Medical Doctor," Dr. Liberato Casison (titled "Attending Physician"). Using the MERCK Manual of Medical Information, Second Home Edition, and the World Book Medical Encyclopedia, these individuals discussed general medical information related to tuberculosis, appendicitis, and gonorrhea. They opined that the Veteran's documented in-service appendicitis and gonorrhea and his alleged pulmonary tuberculosis were related to his causes of death (pneumonia and coronary artery disease), concluding that the Veteran's causes of death were therefore service-connected.

In an undated "medical assessment," Dr. Casison opined that the most likely nature of the Veteran's alleged "lung trouble" was tuberculosis, as it was the "prevailing lung disease among soldiers in World War II and [was] very communicable." He also stated that of all lung infections, pulmonary tuberculosis is the "only one that can go into a chronic, sometimes insidious state," and that "clinical improvement can occur every now and then, to be followed by recurrences." Dr. Casison described how tuberculosis pneumonia can lay dormant for prolonged periods before being expressed again. Moreover, the doctor opined that "re-infection" of tuberculosis pneumonia was "very plausible" given the Veteran's lowered immune system (due to such disorders as hypertension and coronary artery disease) and inadequate medical treatment.

In an April 2011 statement, [redacted] asserted that he served in the Philippine Scouts from April 1946 to January 1949 and was a companion and friend of the Veteran around their time of discharge. Mr. [redacted] recalled that the Veteran "always complain[ed]" of chest pain and experienced a "continuous hard cough." He advised the Veteran to seek treatment because this condition was getting worse. According to Mr. [redacted], the Veteran died due to "complication of his [l]ungs and it was service-connected."

In April 2011, the Appellant and her witnesses provided testimony at a Board hearing. Dr. Casison testified to practicing Internal Medicine for 40 years, with most of his patients being veterans. Based on his review of the Veteran's record and dates of service, Dr. Casison opined that the "most possible cause" of the Veteran's "lung trouble" in April 1951 was tuberculosis pneumonia. Dr. Casison based this opinion on the prevalence of tuberculosis pneumonia in the region at the time, the infectious nature of the disease, and the Veteran's alleged treatment at San Lazaro Hospital Compound in 1951. He further stated that patients carrying tuberculosis pneumonia could be asymptomatic "for a time" and then have symptoms reappear when their immune system was compromised. Dr. Casison opined that the Veteran's tuberculosis pneumonia remained dormant until his immune system was weakened by other diseases, at which time it reactivated. He also stated that one of the Veteran's causes of death was pneumonia related to tuberculosis. However, given the evidence of record, Dr. Casison was unable to opine that the Veteran's coronary artery disease was related to active duty service.

Ester De La Cruz testified that she had never met the Veteran and that her opinions were predicated on a review of his claims file and encyclopedias. When asked if she had any medical training, Ms. De La Cruz stated only that she had training in "research." 

The Veteran's daughter essentially testified that she had no knowledge of the Veteran's medical treatment following his military service other than what she gleaned from a review of his records. Her assertion that the Veteran's cause of death was related to service was based on Dr. Casison's and Ms. De La Cruz's opinions, not on her own medical training. 

A VA medical opinion was obtained in November 2014. Based on a review of the available records, the examiner opined that the Veteran's pneumonia was less likely than not incurred in or caused by the claimed in-service event, injury, or illness. The examiner noted that although the Veteran was diagnosed with an upper respiratory infection while in service, this diagnosis affects a different site of lung involvement than pneumonia. In addition, pneumonia is caused by an acute infection, thus it is unlikely that a case of pulmonary tuberculosis in 1951 would have caused the pneumonia to which the Veteran succumbed in 2007. In other words, the Veteran's illness in 1951 was too remote in time to be of relevance to his diagnosis of pneumonia over fifty years later. The examiner also concluded that it was less likely than not that the Veteran's in-service upper respiratory tract infection was the cause of his death in 2007. 

Analysis

Preliminarily, the Board observes that Mr. [redacted] submitted two statements in support of the Appellant's claim wherein he suggested that the Veteran experienced a respiratory disorder or symptoms thereof prior to his service in the Philippine Scouts. 

Every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b).

As discussed above, the Veteran had a physical examination in April 1946, at the time of his entrance into service. The examination did not demonstrate any abnormalities. Further, a radiological examination of the Veteran's chest was deemed normal. As such, no respiratory disorder was noted at the time of the Veteran's examination, acceptance, and enrollment into the Philippine Scouts. Further, given the clinical findings derived from the April 1946 entrance examination, the Board finds that Mr. [redacted]'s statements are not clear and unmistakable evidence that a respiratory disorder pre-existed the Veteran's military service. The evidence of record is otherwise silent as to a pre-existing respiratory disorder. As such, the Board finds that the Veteran was sound at the time he entered service in the Philippine Scouts. Id.

The earliest evidence of record demonstrating complaints of or treatment for pneumonia or coronary artery disease is dated decades after the Veteran's service in the Philippine Scouts. This prolonged period without complaints or treatment is evidence that there has not been a continuity of symptomatology, and it weighs heavily against the Appellant's claim. See Mense v. Derwinski, 1 Vet. App. 354, 356 (1991) (holding that VA did not err in denying service connection when the veteran failed to provide evidence demonstrating continuity of symptomatology and failed to account for the lengthy time period for which there was no clinical documentation of his disability).

In making this determination, the Board acknowledges that the Veteran submitted a claim of entitlement to service connection for "lung trouble" in March 1951. Therein, he claimed that his "lung trouble" began the day he was discharged from military service. He denied in-service treatment for "lung trouble," but asserted that he was treated at San Lazaro Hospital for pulmonary tuberculosis in February 1951. 

Lay testimony is competent to establish the presence of observable symptomatology and "may provide sufficient support for a claim of service connection." Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). Lay evidence is competent and sufficient in certain instances related to medical matters. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Specifically, such instances include establishing a diagnosis of a condition when (1) a layperson is competent to identify the medical condition; (2) the layperson is reporting a contemporaneous medical diagnosis; or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Id. at 1377. Similarly, when a disorder may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and it is therefore capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). 

The Board finds that pulmonary tuberculosis is not a disorder that can be diagnosed by unique and readily identifiable features and, thus, the presence of such is a determination that is medical in nature. Id. There is no evidence demonstrating that the Veteran possessed the necessary skills, training, or experience to identify and diagnose the presence of pulmonary tuberculosis. See Jandreau, 492 F.3d at 1377. Moreover, as discussed above, the evidence of record does not include a contemporaneous medical diagnosis of pulmonary tuberculosis. Id. Finally, as will be discussed in greater detail below, although Dr. Casison provided a retrospective diagnosis of pulmonary/pneumonia tuberculosis based on his review of the Veteran's claims file, the Board finds that his opinions of record are not probative for purposes of determining entitlement to service connection for the cause of the Veteran's death. As the Veteran's lay observations do not support a later diagnosis by a medical professional, they are not competent evidence as to the presence of pulmonary or pneumonia tuberculosis on and after March 21, 1949. Id.

Nevertheless, during the pendency of this appeal, the Appellant essentially claimed that the Veteran had experienced pneumonia tuberculosis since his discharge from service. "Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Savage v. Gober, 10 Vet. App. 488, 496 (1997) (citing Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991)); see also 38 C.F.R. § 3.303. Accordingly, the Board must consider the lay evidence of record regarding the Veteran's symptoms since his military service.

The Appellant submitted evidence that asserted the Veteran had continuously experienced symptoms of a respiratory disorder since his service in the Philippine Scouts. This evidence is considered competent evidence as to the presence of observable symptoms such as coughing, difficulty breathing, and chest pain. Layno, 6 Vet. App. at 469-70. Although the Board has found that there is competent evidence of record as to the presence of these observable symptoms, the Board must also determine whether such evidence is credible. Id. In weighing credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self-interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor. Caluza v. Brown, 7 Vet. App. 498, 506 (1995). Further, the Board may weigh the absence of contemporaneous medical evidence against lay evidence in determining credibility, but the Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 Vet. App. 1331, 1337 (Fed. Cir. 2006).

The Veteran asserted during his lifetime that he contracted pulmonary tuberculosis the day of his military discharge, March 21, 1949, and that he was eventually treated at San Lazaro Hospital in February 1951. The Appellant did not specifically state that the Veteran had experienced lay observable symptoms of a respiratory disorder since his service discharge, but rather asserted that the Veteran incurred a disability, shortly after discharge, that was related to his cause of death. However, the Veteran had a physical examination on March 19, 1949, for the purpose of discharge, which included a radiological examination of his chest. The examination did not yield any abnormal findings and the chest x-ray did not demonstrate any significant abnormalities. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) (holding that contemporaneous evidence has greater probative value than history as reported by a veteran). 

Further, the June 1952 letter from the Acting Chief of San Lazaro Hospital stated that a search for records dating from January 1951 to March 1951 failed to show that the Veteran was admitted or confined for treatment. Likewise, a contemporaneous search for records at the National Chest Center produced no evidence of treatment. Indeed, none of the probative post-service evidence of record demonstrates that the Veteran complained of or was treated for pulmonary or pneumonia tuberculosis and none of the probative post-service evidence of record demonstrates that he complained of or was treated for pneumonia for decades after his service discharge. Given the results of the March 19, 1949, radiological evaluation, the absence of any post-service treatment of pulmonary or pneumonia tuberculosis, and the prolonged period of time between the Veteran's discharge and his first post-service treatment for pneumonia, to the extent the Appellant asserts that the Veteran continuously experienced post-service symptoms of pulmonary or pneumonia tuberculosis or pneumonia following service, the Board finds that such assertions are not credible and they will not be considered herein. Caluza, 7 Vet. App. at 506; Buchanan, 451 Vet. App. at 1337; Rhodes v. Brown, 4 Vet. App. 124, 126-27 (1993).

In January 2010, Mr. [redacted] submitted two statements that he and the Veteran were from the same region of the Philippines and that they served in the Philippine Scouts at the same time. He claimed that the Veteran experienced coughing and difficulty breathing as early as March 31, 1945, and that the Veteran continuously experienced these symptoms following discharge. In an April 2011 statement, Mr. [redacted] also reported that he served in the Philippine Scouts during the same time period as the Veteran. Mr. [redacted] said the Veteran "always" complained of chest pain and had a "continuous hard cough." In contrast, the Veteran's entrance and discharge reports of examination are absent any abnormal findings or reports of such ailments. In fact, radiological test results from both examinations revealed no significant abnormalities. Id. The Veteran's service treatment records demonstrate that he received treatment for hook worms, thus he had access to and utilized medical treatment for other disorders. However, these records are negative for complaints of or treatment for pulmonary or pneumonia tuberculosis or pneumonia or symptoms thereof, to include coughing, difficulty breathing, and chest pain. Further, the post-service evidence of record does not demonstrate credible complaints of or treatment for pneumonia for decades after the Veteran's military service. Consequently, given that Mr. [redacted]'s and Mr. [redacted]' statements are directly contradicted by the evidence of record, the Board finds that their statements are not credible and they will not be considered herein. Caluza, 7 Vet. App. at 506; Buchanan, 451 Vet. App. at 1331; Rhodes, 4 Vet. App. at 126-27. 

The record is otherwise negative for evidence demonstrating a continuity of post-service symptoms of pulmonary or pneumonia tuberculosis or pneumonia. In addition, the Appellant does not assert and the evidence of record does not support a finding of continuity of post-service symptoms for coronary artery disease. See Robinson, 21 Vet. App. at 553. Thus, the Board finds that service connection for the Veteran's cause of death is not warranted on the basis of continuity of symptomatology. 38 C.F.R. § 3.303(b).

Additionally, the assertions of the Appellant, Mr. [redacted], Mr. [redacted], and the Veteran's daughter are not sufficient to demonstrate that it is at least as likely as not that the cause of the Veteran's death was related to his military service. Medical diagnosis and causation involves questions that are beyond the realm of common experience and common knowledge; rather, they require the special knowledge and experience of a trained medical professional. As there is no evidence that these individuals are trained medical professionals, the statements of the Appellant, Mr. [redacted], Mr. [redacted], and the Veteran's daughter are not competent evidence as to whether the cause of the Veteran's death was a disability incurred in or aggravated by his military service. Espiritu v. Derwinski, 2 Vet. App. 492, 495 (1992); Jandreau, 492 F.3d at 1377; Grottveit v. Brown, 5 Vet. App. 91, 93 (1993).

In March 2010, Mr. Mendoza submitted an opinion addressing the etiological relationship between the Veteran's cause of death and his service in the Philippine Scouts. In July 2010, Mr. Mendoza and Ms. De La Cruz submitted another such opinion. Mr. Mendoza and Ms. De La Cruz claimed to be "Nurse Researchers" without further elaboration as to their training, education, or competency to deliver etiological opinions. 38 C.F.R. § 3.159(a)(1). However, with respect to both opinions, a medical doctor purportedly assisted or oversaw their efforts to develop an opinion (an illegible doctor's name for the March 2010 opinion and Dr. Casison for the July 2010 opinion). As such, these opinions will be accepted as competent medical evidence. See Cox v. Nicholson, 20 Vet. App. 563, 569 (2007). 

Mr. Mendoza and Ms. De La Cruz reviewed the relevant evidence of record and utilized the MERCK Manual of Medical Information, Second Home Edition and the World Book Medical Encyclopedia in formulating their opinions. The opinions consist of providing general medical information pertaining to pneumonia; diabetes mellitus, type II; heart attacks; high blood pressure; dysarthria; tuberculosis; appendicitis; and gonorrhea. In the March 2010 opinion, Mr. Mendoza provided a diagnosis of "pneumonia moderate; [cardiovascular accident]," then opined that the Veteran experienced a "lung problem" that started in 1946 and persisted until his death. In the July 2010 opinion, Mr. Mendoza and Ms. De La Cruz opined that the Veteran's documented in-service appendicitis and gonorrhea and his alleged pulmonary tuberculosis were related to his causes of death (pneumonia and coronary artery disease) and, therefore, the Veteran's causes of death were service-connected.

Neither the March 2010 opinion nor the July 2010 opinion includes consideration of findings from clinical examinations administered to the Veteran. Further, neither opinion provides a rationale for the conclusions reached. Mr. Mendoza and Ms. De La Cruz essentially copied general medical information from reference books and then concluded that the Veteran's causes of death were related to his military service without a discussion of how they reached that conclusion. A medical opinion that is unsupported and unexplained is purely speculative and does not provide the degree of certainty required for medical nexus evidence. Nieves-Rodriguez, 22 Vet. App. at 304. Significantly, neither opinion addresses the lack of in-service complaints of or treatment for a respiratory disorder. Further, neither opinion discusses the clinical findings derived from the Veteran's discharge examination, to include a radiological examination demonstrating no significant abnormalities. Reonal v. Brown, 5 Vet. App. 458, 460-61 (1993) (holding that medical opinions based on incomplete or inaccurate factual premises are not probative). As such, the Board finds that the March 2010 and July 2010 opinions are inadequate and have no probative value.

During the April 2011 Board hearing, Ms. De La Cruz primarily discussed the Appellant's entitlement to Dependency and Indemnity Compensation. Ms. De La Cruz also asserted that the Veteran's causes of death were related to his service in the Philippine Scouts. When asked about her competency to render such opinions, she claimed that she had undergone training as a "Researcher," but she did not refer to specific medical education, training, or experience. As such, the Board finds that Ms. De La Cruz is not a medical professional or otherwise capable of rendering competent etiological opinions. See Cox, 20 Vet. App. at 569. Accordingly, her testimony will be treated as lay evidence. As a layperson, Ms. De La Cruz's assertions are insufficient to establish causation because such opinions involve questions that are beyond the range of common experience and common knowledge; rather, they require the special knowledge and experience of a trained medical professional. As she is not a trained medical professional, Ms. De La Cruz's statements are not competent evidence that the Veteran's death was caused by a disability incurred in or aggravated by his military service. Espiritu, 2 Vet. App. at 495; Jandreau, 492 F.3d at 1377; Grottveit, 5 Vet. App. at 93.

In an undated opinion, Dr. Casison opined that the "most likely" nature of the Veteran's alleged "lung trouble" in February 1951 was tuberculosis. In support of this conclusion, Dr. Casison noted that tuberculosis was the "prevailing lung disease among soldiers in World War II and [was] very communicable." In finding that the Veteran's cause of death (pneumonia, bilaterally) was etiologically related to military service, Dr. Casison stated that pulmonary tuberculosis is the "only [lung disease] that can go into a chronic, sometimes insidious state," meaning that there could be periods of dormancy and expression. In other words, Dr. Casison diagnosed the pneumonia that caused the Veteran's death as an expressive period of pneumonia tuberculosis. He then opined that "re-infection" of pneumonia tuberculosis was "very plausible" given the Veteran's lowered immune system and inadequate medical treatment. During the April 2011 Board hearing, Dr. Casison essentially reiterated this opinion. He added that he believed the Veteran's "lung trouble" on and after March 21, 1949, was pneumonia tuberculosis because of the prevalence of tuberculosis pneumonia in the region at the time, the infectious nature of the disease, and because the Veteran was allegedly treated at San Lazaro Hospital Compound in 1951, where it was suggested that individuals with pneumonia tuberculosis were typically treated.

Dr. Casison's undated opinion and the opinion he rendered during the April 2011 Board hearing are both predicated on his determination that the Veteran had pulmonary or pneumonia tuberculosis on and after March 21, 1949. However, the evidence of record does not include any clinical findings or diagnoses of a respiratory disorder, to include pulmonary tuberculosis, pneumonia tuberculosis, or pneumonia, during that time period. The Veteran's service treatment records do not include complaints of or treatment for a respiratory disorder or symptoms thereof. Significantly, two days before the Veteran asserted that he contracted pulmonary tuberculosis, a chest x-ray was negative for significant abnormalities. In March 1951, the Veteran submitted a claim of entitlement to service connection for "lung trouble," stating that he had experienced pain since March 21, 1949, and that he had been treated for pulmonary tuberculosis in February 1951 at San Lazaro Hospital. Despite searches for records at both San Lazaro Hospital and the National Chest Center, no records of such treatment were ever obtained or otherwise submitted. Moreover, as explained above, the evidence of record does not show that the Veteran had the knowledge, skills, or ability to diagnose the presence of pulmonary tuberculosis. Jandreau, 492 F.3d at 1377. Although the Veteran reported receiving treatment at San Lazaro Hospital and/or the National Chest Center, records evidencing such treatment were never found or submitted. As such, Dr. Casison's opinion that the Veteran had pulmonary or pneumonia tuberculosis in February 1951 is predicated solely on the Veteran's report of "lung trouble" and pain, and general medical information that pneumonia tuberculosis was prevalent in the region at that time, was a highly infectious disease, and because the Veteran claims to have been treated at San Lazaro Hospital. 

The Board finds that Dr. Casison's opinions are based on pure speculation and thus are inadequate for purposes of determining entitlement to service connection for the causes of the Veteran's death. See Bloom v. West, 12 Vet. App. 185 (1999) (finding that a medical opinion based on speculation, without supporting clinical data or other rationale, does not provide the degree of certainty required for medical nexus evidence). Further, Dr. Casison opined that the Veteran died from pneumonia tuberculosis, not pneumonia, as was indicated on the Certificate of Death. He also found that the pulmonary tuberculosis the Veteran allegedly experienced in February 1951 was related to the Veteran's pneumonia tuberculosis that caused his death. He did not provide an explanation as to how he arrived at these conclusions; he did not discuss any clinical findings; and he did not reference any medical evaluation performed prior to the Veteran's death. For these additional reasons, the Board finds that Dr. Casison's opinions are unexplained and thus inadequate. Nieves-Rodriguez, 22 Vet. App. at 304.

The record is otherwise negative for evidence demonstrating that the Veteran's cause of death was etiologically related to his service in the Philippine Scouts. 

On the other hand, the Board affords the opinion of the November 2014 VA examiner great probative value in considering whether service connection is warranted for the Veteran's cause of death. The examiner provided appropriate rationale for her opinions, which were based on a thorough review of the record and on the examiner's knowledge and skill in analyzing the evidence. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993); see also Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (the probative value of a medical opinion is derived from a factually accurate, fully articulated, and soundly reasoned opinion); Prejean v. West, 13 Vet. App. 444, 448-49 (2000) (the thoroughness and detail of a medical opinion is a factor in assessing the probative value of the opinion). The examiner specifically cited to her review of the statements from Ms. [redacted], Mr. [redacted], and Mr. [redacted]. In addition, she provided a fully articulated rationale, citing medical principles, for finding that the Veteran's pneumonia in 2007 was less likely as not related to his upper respiratory tract infection during service or to any diagnosis of pulmonary tuberculosis in 1951. Thus, the Board accepts the VA examiner's opinion as highly probative evidence that the Veteran's pneumonia is not related to a disability incurred in or aggravated by his military service. 

For these reasons, the Board concludes the probative evidence of record does not demonstrate that it is at least as likely as not that the Veteran's causes of death (pneumonia, bilateral, and coronary artery disease) were related to his active military service. In reaching this conclusion, the Board considered the doctrine of reasonable doubt. However, as the evidence of record is not at least in equipoise, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

ORDER

Service connection for the cause of the Veteran's death is denied.

____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs